UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                              CASE NO. 8:18-cr-594-T-24JSS

EMIRO HINESTROZA-NEWBBOOLL

## UNITED STATES' SENTENCING MEMORANDUM

COMES NOW, the United States of America, by and through the undersigned counsel, and hereby submits this memorandum in opposition to defendant, Emiro Hinestroza-Newbbooll's objections as to the Base Offense Level and the § 3C1.1 obstruction of justice adjustment reflected in his Presentencing Report ("PSR").

## FACTUAL & PROCEDURAL BACKGROUND

The defendant was charged in a two-count indictment with possession, and conspiracy to possess, with the intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. § 70501, *et seq*. The defendant entered a plea of not guilty to both charges in the indictment and proceeded to trial. On January 30, 2020, the defendant was found guilty by the jury of both counts charged in the indictment.

At trial, the evidence demonstrated that the defendant was a knowing and willful participant in a conspiracy to transport well over 450 kilograms of cocaine from Colombia to Central America using a go-fast style smuggling vessel. This evidence included the testimony of the Coast Guard C-130 aircrew who initially observed and recorded the defendants onboard the go-fast vessel and the Coast Guard boarding team that located and eventually interdicted the smuggling vessel. The United States also introduced over three (3) hours of high definition video footage recorded by the Coast Guard C-130 aircraft depicting the defendant and his co-defendants jettison over thirty (30) bales of cocaine from the go-fast vessel several hours before the Coast Guard boarding team arrived on scene. *See* Gov. Ex. 2A-2Q. Through this evidence, the United States demonstrated that the defendant and his co-defendants jettisoned all of the cocaine onboard the go-fast vessel by tying the bales together using two separate lines and eventually sinking the cocaine, along with both outboard engines, after securing the lines and bales to the engines.

During their testimony, the Coast Guard boarding team members detailed their extensive maritime counter-drug experience and familiarity with what cocaine bales look like and how cocaine is routinely packaged and transported in the maritime environment. This experience included numerous interdictions of go-fast vessels smuggling large amounts of cocaine and the offloading and

processing of hundreds, if not thousands, of cocaine bales. These Coast Guard officers testified, based on their extensive professional experience and review of the C-130 video footage, that the thirty-plus floating bales depicted in Exhibit 2Q were 20-kilogram bales of cocaine, which are distinct in size and shape and contain two stacks of 10 bricks, each containing 1 kilogram of cocaine.

At trial, the United States did not introduce any post-arrest statements of the co-defendants and only admitted the defendant's initial post-arrest admissions, consisting primarily of his insistence that he was the captain of the vessel depicted in the C-130 video footage and that he knew more about the operation than his co-defendants. During a subsequent interview which was not referenced at trial, the defendant admitted that the go-fast smuggling vessel was loaded with 38 bales of cocaine weighing approximately 760 kilograms. He also admitted that he and his co-defendants tied the bales together and then to the vessel's engines after seeing a patrol aircraft. The defendant also admitted that he and his co-defendants sank the cocaine bales by removing the vessel's engines and dropping them overboard.

Co-defendant, Newball May gave a similar account during his post-arrest interview but falsely maintained that the cocaine bales were actually filled with conch, a claim that has twice been rejected by a federal jury. Newball May explained that he and his co-defendants saw a Coast Guard plane, decided to

dump the "sacs," tied the "sacs" together and to the vessel's engines, and finally dumped both the engines and "sacs" overboard. He admitted that there were "two ropes," each with "15-17 sacs."

Following the defendant's conviction at trial, a pre-sentencing report was prepared. The defendant's PSR reflects a Base Offense Level of 38 based on the defendant possessing and conspiring to possess 38 bales containing approximately 760 kilograms of cocaine. The report also includes a two (2) level adjustment for obstruction of justice based on the defendant jettisoning and ultimately sinking all of the cocaine bales prior to his detention by the Coast Guard. Defendant, Hinestroza Newbbooll objects to the drug quantity attributed to him as well as the obstruction of justice adjustment. For the reasons articulated below, the United States opposes these objections.

## **DRUG AMOUNT & BASE OFFENSE LEVEL**

The defendant objects to a Base Offense Level 38 and contends that "there is no proof" that the amount of cocaine involved in the instant offenses was 450 kilograms or more, presumably because the Coast Guard was unable to recover any of the cocaine bales that the defendants sank to the bottom of the ocean. The United States contends however that the evidence admitted at trial and the uncontroverted facts in the PSR establish by a preponderance of the evidence that

the defendants possessed and conspired to possess well over 450 kilograms of cocaine.

As in this case, "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." *United States v. Frazier,* 89 F.3d 1501, 1506 (11th Cir.1996) (quoting U.S.S.G. § 2D1.1, cmt. n. 12, now found at cmt. n. 5). Therefore, a sentence "may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to the defendant." *United States v. Zapata,* 139 F.3d 1355, 1359 (11th Cir.1998).

Moreover, "[t]he district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing." *United States v. Polar,* 369 F.3d 1248, 1255 (11th Cir.2004). A sentencing court may consider any information with sufficient indicia of reliability. *See United States v. Ghertler,* 605 F.3d 1256, 1269 (11th Cir.2010); *United States v. Giltner,* 889 F.2d 1004, 1007 (11th Cir.1989). *See also*, U.S.S.G. § 6A1.3(a).

Thus in fashioning a sentence, the Court can consider "reliable hearsay..., so long as the defendant has the opportunity to rebut the evidence or generally to cast doubt upon its reliability." *United States v. Query,* 928 F.2d 383, 385 (11th Cir.1991) (quotation omitted). This includes hearsay statements referenced in a

PSR made by co-conspirators and co-defendants to federal agents. *United States v. Riley*, 142 F.3d 1254, 1258 (11th Cir. 1998) (district court was entitled to consider cooperating co-defendant's statement regarding drug amount, as reported in the presentence report, as a proper basis for calculating the amount of drugs attributable to defendant). *See also*, *United States v. Garces*, 645 F. App'x 973, 980 (11th Cir. 2016) (district court properly determined that multiple hearsay statements of "jailhouse witnesses," taken together, were reliable and corroborated by other evidence); *United States v. Milan*, 398 F.3d 445, 457 (6th Cir. 2005) (court was permitted to use co-defendants' proffer statements in calculating defendants' drug amounts where it was not obvious that the statements were untruthful).

In this case, there is sufficient reliable evidence that the defendant possessed and conspired to possess 450 kilograms or more of cocaine. At trial, the United States admitted several video exhibits from the Coast Guard C-130 clearly depicting over 30 bales of cocaine floating in the water attached to the smuggling vessel by two separate lines or ropes. *See*, Government Exhibits 2D, 2E, 2Q. Several of the Coast Guard officers involved in this case testified at trial that, based on their vast experience in counter-narcotics operations, the bales observed in Government Exhibit 2Q were 20-kilogram bales of cocaine, which are distinct in size and shape and contain two stacks of 10 bricks, each containing 1 kilogram

of cocaine. This testimony is consistent with the clearly observable, large splashes made by the 20-kilogram (or 45 to 50 pound)[1] cocaine bales as they are dropped over the side of the go-fast vessel and into the water. *See* Ex. 2Q at 1:10-1:30, 3:00-3:05. Thus, by itself, the evidence at trial demonstrates that the defendant possessed and conspired to possess at least 600 kilograms of cocaine (30 bales x 20 kilograms per bale = 600 kilograms).

While the Coast Guard C-130 video footage provides a sufficiently reliable method of counting cocaine bales, co-defendant Newball May's post-arrest statements provide an additional reliable method to determine the amount of cocaine jettisoned from the defendant's smuggling vessel. Consistent with the evidence admitted at trial, Newball May told federal agents that after the defendants "saw a Coast Guard plane" they "decided to dump the sacs" onboard the GFV. Newball May explained that there were "two ropes," each with "15-17 sacs" which the defendants tied to the vessel's engines and later sunk along with the engines. Therefore, according to Newball May, there were at least 30 to 34 "sacs" jettisoned from the defendant's vessel.

Newball May's description of the number of bales and manner in which they were tied together and secured to the vessel is consistent with and

---

[1] 1 kilogram is the equivalent of approximately 2.2 pounds. Thus, 20 kilograms is the equivalent of approximately 44 pounds. A 20-kilogram cocaine bale would therefore weigh 45 to 50 pounds, depending on the weight of any packaging and bale material.

corroborated by the aforementioned C-130 video imagery. By virtue of its guilty verdict, the jury rejected the defendants' claims that the rectangular floating bales depicted in the C-130 video footage were "sacs" filled with conch and instead concluded, beyond a reasonable doubt, that they were filled with cocaine. Combined with the trial testimony of the Coast Guard boarding team, Newball May's admissions provide a reliable estimate of 600 to 680 kilograms of cocaine (30 to 34 bales, each containing 20 kilograms of cocaine) and thus an amount well beyond the 450 kilograms threshold for Base Offense Level 38.

Finally, during an interview with federal agents, the defendant, the admitted captain of the smuggling vessel, acknowledged that the vessel was loaded with 38 bales of cocaine weighing approximately 760 kilograms. This admission is consistent with the somewhat lower estimate provided by co-defendant, Newball May (who was not the captain of the vessel) and more importantly, corroborated by the video imagery recorded by the Coast Guard C-130. Moreover, the total weight provided by defendant, Hinestroza Newbbooll is consistent with the Coast Guard boarding team's trial testimony that the bales depicted in Government Exhibit 2Q were in fact 20 kilogram-sized bales of cocaine (*i.e.* 38 bales x 20 kilograms per bale = 760 kilograms).

In sum, the Court need not speculate to determine the amount of drugs attributable to the defendant. Contrary to the defendant's claims, the evidence

described above is sufficient and reliable evidence that the amount of cocaine jettisoned from the smuggling vessel was at least 450 kilograms, particularly in light of the lower standard of proof applicable to this sentencing hearing. Accordingly, the United States contends that the PSR correctly calculated the defendants' Base Offense Level of 38 based on an attributable drug weight of 450 kilograms or more of cocaine.

## **OBSTRUCTION OF JUSTICE ADJUSTMENT**

As reflected in the final PSR, the United States is seeking a two (2) level upward adjustment for obstruction of justice as to each defendant. USSG § 3C1.1 provides that if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and…the obstructive conduct related to the defendant's offense of conviction and any relevant conduct" that the offense level must be increased by 2 levels. "[T]he key to a finding of obstruction is the intention of the actor, not the actual success of his obstructive acts." *United States v. Garcia*, 208 F.3d 1258, 1262 (11th Cir. 2000), *vacated on other grounds*. Additionally, "[t]here is no requirement that defendant's obstructive acts occur subsequent to the formal commencement of an investigation[.]" *See also, United States v. Wayerski*, 624 F.3d 1342, 1352 (11th Cir. 2010) (upholding adjustment for pre-arrest, "affirmative steps to prevent law

enforcement from detecting [defendants'] illicit activity and to impede any investigation"). "Obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." USSG § 3C1.1, n.1.

Examples of qualifying obstructive conduct include "destroying or concealing…evidence that is material to an official investigation or judicial proceeding…or attempting to do so." USSG § 3C1.1, n.4.D. "It is self-evident that illegal drugs are material to any drug investigation or prosecution." *United States v. Massey*, 443 F.3d 814, 821 (11th Cir. 2006). An obstruction of justice adjustment is appropriate where a defendant attempts to destroy or conceal a controlled substance contemporaneous with his arrest where the obstructive conduct "results in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender. *Id*. "The 'actual hindrance' test is only for those acts done at the time of arrest." *Garcia*, 208 F.3d at 1262. "Material" is defined as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." USSG § 3C1.1, n.6. "Under U.S.S.G. § 3C1.1, the threshold for materiality is 'conspicuously low.'" *Massey*, 443 F.3d at 821, quoting *United States v. Dedeker,* 961 F.2d 164, 167 (11th Cir.1992). Finally, the defendant is

accountable for the defendant's own obstructive conduct and "for conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." USSG § 3C1.1, n.9.

In this case, the defendants, while aiding and abetting each other, intentionally destroyed "the most incriminating evidence against [them;]" they jettisoned 38 bales of cocaine weighing approximately 760 kilograms from the smuggling vessel and successfully destroyed this evidence by tying the bales to the vessel's engines, jettisoning the engines, and sinking all of the cocaine and engines to the ocean floor. *Massey*, 443 F.3d at 821. This evolution took over two hours to complete and occurred several hours before the Coast Guard boarding team arrived on scene. *See* Government Exhibits 2A-2K. Thus, the evidence destruction did not occur contemporaneous with their detention and eventual arrest by federal authorities. Accordingly, "actual hindrance" is not required for an obstruction adjustment in this case. *Garcia*, 208 F.3d at 1262. Because of the defendants' obstructive conduct, the Coast Guard was not able to recover any of the cocaine despite an expansive search by the Coast Guard C-130. Accordingly, the defendants intentionally destroyed evidence that was material to the investigation and subsequent prosecution in this case. "The fact that [they were] unsuccessful, or even that the concealment was destined to fail, which is debatable, is irrelevant." *Massey*, 443 F.3d at 821.

Assuming *arguendo* that the cocaine destruction occurred contemporaneous with the defendants' arrest, their obstructive conduct did result in a material hindrance to the official investigation, prosecution, and now sentencing of this defendant. After all, the United States had the burden at trial of proving beyond a reasonable doubt that the defendant possessed and conspired to possess with the intent to distribute cocaine and that the weight of that cocaine was five kilograms or more. During this sentencing hearing, the United States must establish the weight of the cocaine involved (which is being contested by the defendant).

In both proceedings, the United States has not been able to replace the evidence destroyed by the defendants. The United States was unable to test the cocaine, weigh the cocaine, or photograph the cocaine. At trial, the United States was unable to call a forensic chemist to establish that the substance possessed by the defendant was in fact cocaine or to establish the actual weight of the substance without packaging. Similarly, the United States was unable to introduce testimony or evidence of the inventory and field-testing of the cocaine by Coast Guard and federal law enforcement officers. Ultimately, the United States was not able to recover or replace the "the most incriminating evidence" of the defendant's guilt and the seriousness of the offenses. *Massey*, 443 F.3d at 821. Accordingly, the defendant's willful destruction of evidence resulted in a material hindrance to the official investigation, prosecution, and now sentencing

proceeding in this case. *See United States v. Korfhage*, 683 F. App'x 888, 893 (11th Cir.), *cert. denied*, 138 S. Ct. 205 (2017) (upholding obstruction adjustment based on material hindrance where defendant deleted pictures which were "compelling evidence" of guilt, and "it took months for law enforcement to recover them."). Accordingly, regardless of when the destruction took place, an adjustment for obstruction of justice is warranted under USSG § 3C1.1.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the United States respectfully requests that this Honorable Court overrule the defendants' objections as to the Base Offense Level and the § 3C1.1 obstruction of justice adjustment.

    Respectfully submitted,

    MARIA CHAPA LOPEZ
    United States Attorney

By:    */s/ Nicholas G. DeRenzo*
       Nicholas G. DeRenzo
       Special Assistant United States Attorney
       Florida Bar No. 85831
       400 N. Tampa Street, Suite 3200
       Tampa, Florida 33602-4798
       Telephone:   (813) 274-6000
       Facsimile:    (813) 274-6358
       E-mail: Nicholas.Derenzo@usdoj.gov

U.S. v. Hinestroza-Newbbooll   Case No. 8:18-cr-594-T-24JSS

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Daniel Hernandez, Esq.

          */s/ Nicholas G. DeRenzo*
          Nicholas G. DeRenzo
          Special Assistant United States Attorney
          Florida Bar No. 85831
          400 N. Tampa Street, Suite 3200
          Tampa, Florida 33602-4798
          Telephone: (813) 274-6000
          Facsimile: (813) 274-6358
          E-mail: Nicholas.Derenzo@usdoj.gov