```
                 UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,
                                Case No. 8:18-CR-594-T-24JSS
-vs-                            7 October 2020
                               Tampa, Florida
                               11:05 a.m.
EMIRO HINESTROZA-NEWBBOOLL,

          Defendant.
------------------------------/


              TRANSCRIPT OF SENTENCING HEARING
         BEFORE THE HONORABLE SUSAN C. BUCKLEW,
          UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government:      TONI A. GOODIN, ESQUIRE
                         Assistant United States
                          Attorney

For the Defendant:       DANIEL M. HERNANDEZ, ESQUIRE
                         Daniel M. Hernandez, P.A.
                         902 North Armenia Avenue
                         Tampa, Florida 33609
                         (813) 875-9694


FOR THE PROBATION DEPT.:  TYLER CAMPBELL

Reported By:             PAUL K. SPANGLER, RPR,
                         Retired Official Court
                          Reporter
                         Certificates of Merit and
                          Proficiency, Notary Public
                         (813) 240-9127


STENOGRAPHICALLY RECORDED
COMPUTER-AIDED TRANSCRIPTION
BY ECLIPSE
```

```
 1   (11:05 a.m.)   P R O C E E D I N G S

 2            THE PROBATION OFFICER:  Good morning.

 3            THE COURT:  Good morning.

 4            (Pause.)

 5            We're going to start.

 6            Could you turn my mic on.

 7            Thanks.

 8            All right, the matter that is set for

 9   sentencing is the United States of America versus

10   Emiro Hinestroza-Newbbooll, which is criminal case

11   18-594.

12            And I'm going to ask the courtroom deputy

13   to swear the interpreter.

14            THE DEPUTY CLERK:  Yes, Your Honor.

15            Please raise your right hand.

16   Thereupon,

17                   JAMES PLUNKETT,

18   the interpreter, having been duly sworn, interpreted as

19   follows:

20            THE INTERPRETER:  Yes, I do.

21            James Plunkett, Spanish interpreter.

22            Thank you.

23            Good morning.

24            THE COURT:  If counsel will state their

25   appearances, starting with counsel for the
```

 1   United States.

 2           MS. GOODIN:  Good morning, Your Honor.

 3           Tony Goodin on behalf of the

 4   United States.

 5           Also seated with me at counsel's table is

 6   Special Agent Timothy Campbell [sic].

 7           THE COURT:  Good morning.

 8           MR. HERNANDEZ:  Good morning, Your Honor.

 9           Daniel Hernandez on behalf of the

10   defendant.

11           THE COURT:  Mr. Hernandez.

12           Mr. Hinestroza-Newbbooll, if you will

13   stand, please, sir.

14           And I'm going to ask the courtroom deputy

15   to swear you in.

16           THE DEPUTY CLERK:  Please raise your

17   right hand.

18   Thereupon,

19              EMIRO HINESTROZA-NEWBBOOLL,

20   the defendant, having been duly sworn, testified as

21   follows:

22           THE DEFENDANT:  Yes -- yes, I do.

23           THE DEPUTY CLERK:  Please state your name for

24   the record.

25           THE DEFENDANT:  Emiro Hinestroza-Newbbooll.

```
 1              THE DEPUTY CLERK:  Thank you.

 2              You may put your hand down, but stand --

 3    keep -- remain standing.

 4              THE COURT:  Would you stand up.

 5              Thank you, sir.

 6              Mr. Hinestroza, are you taking any

 7    medicine of any kind?

 8              THE DEFENDANT:  Yes.

 9              THE COURT:  All right, what are you taking,

10    sir?

11              THE DEFENDANT:  I don't know.  I know it's --

12    one is Losartan [sic], but the other pills I don't

13    remember their names.

14              THE COURT:  Okay, what are you taking -- what

15    are you taking medicine for?

16              THE DEFENDANT:  Diabetic.

17              THE COURT:  Okay.

18              All right, you're taking pills for

19    diabetes.  All right.

20              Anything else?

21              THE DEFENDANT:  Uh, the other pills I don't

22    remember their names because I don't have access.

23              THE COURT:  Okay.

24              All right, do you know what they're for?

25              THE DEFENDANT:  Uh, to sleep.  I -- I know
```

```
 1   one of them is to sleep, but I don't know the names.

 2             THE COURT:  All right.

 3             Good enough, thank you.

 4             Mr. Hinestroza, I have in front of me a

 5   Presentence Investigation Report, it was prepared by

 6   the Probation Office, the Probation Officer who

 7   prepared it is sitting over here in the jury box.  I

 8   have read through it, mine is dated September

 9   the 30th, 2020, have you been over this report?

10             THE DEFENDANT:  English.  Everything is in

11   English.

12             THE COURT:  All right, I can't understand the

13   interpreter.

14             THE INTERPRETER:  English.  Everything is

15   English, I don't -- I don't know English.

16             THE COURT:  Okay.

17             Did -- Mr. Hernandez, have you gone over

18   the Presentence Investigation Report in --

19   through -- with an interpreter with Mr. Hinestroza?

20             MR. HERNANDEZ:  No, Your Honor.

21             I have, uh, reviewed the Presentence

22   Report with him directly by video on more than one

23   occasion, but because I speak Spanish, I did not

24   have an interpreter.

25             THE COURT:  Okay.
```

```
 1              MR. HERNANDEZ:  I didn't think there was any
 2     issues as far as Mr. Newbbooll -- Hinestroza-Newbbooll
 3     understanding.
 4              THE COURT:  Okay, so nobody's been over the
 5     Presentence Report with him?
 6              MR. HERNANDEZ:  I have.
 7              THE COURT:  Okay.  I'm -- I'm sorry.  Could I
 8     get you to stand at the podium.
 9              MR. HERNANDEZ:  May I take my mask off?
10              THE COURT:  Yes.
11              MR. HERNANDEZ:  Okay.
12              Judge, I have been -- I have visited
13     Mr. Newbbooll, uh, several times at the jail
14     visitation center where I've spoken with him by
15     video, and I have reviewed the Presentence
16     Investigation Report with him in Spanish.  I speak
17     Spanish.
18              THE COURT:  Okay.
19              All right, just stand there a minute.
20              Mr. Hinestroza, has your attorney been
21     over the Presentence Report with you?
22              THE DEFENDANT:  Virtually.  I mean, we did it
23     virtually, we went over some points, but not all of the
24     points.
25              THE COURT:  All right.
```

1          THE DEFENDANT:  Uh, but we -- we agreed -- we

2     agreed regarding, uh, some -- some of the points, some

3     of the points that I don't know how to say it, but I'll

4     say it kind of like layman's terms, he was going to

5     fight for me regarding those points in particular.

6          THE COURT:  Okay.

7          All right.  So Mr. Hernandez, did you go

8     over the guideline calculations and any -- you talk

9     about any objections that he might have to any of

10    the facts or the guideline calculations with him?

11         MR. HERNANDEZ:  Yes, Your Honor.  And as I

12    said, I think the first time I saw him was shortly

13    after the original report was prepared, March 23rd, uh,

14    I saw him at least twice in between, but I saw him

15    after the revised PSR was submitted on September 30th,

16    so I -- to my knowledge, I've gone over all the points

17    with him, not, uh -- as far as the -- the facts of the

18    case -- first of all, because he pled not guilty, went

19    to trial and is appealing, I -- I really don't want to

20    concede any of the facts that are listed in the

21    Presentence Report because that might become an issue

22    on appeal.

23         Uh, specifically, though, uh, one of the

24    things that I did mention in an email back in -- on

25    March 30th, uh, to the Probation Office is that --

```
 1    and it relates specifically to, uh -- let me find

 2    it.

 3                (Pause.)

 4                Judge, if you look at page 11, paragraph

 5    69.

 6                THE COURT:  Okay, hold on, let me get to

 7    that.

 8                (Pause.)

 9                Yes.  Defendant -- it begins the defendant

10    stated that he possesses specialized skills?

11                MR. HERNANDEZ:  Correct.

12                Uh, he did want me to point out that he

13    does not have specialized skills as a diesel

14    mechanic, cook and navigator.  These are skills he

15    wants to develop while incarcerated.

16                His present skills as a navigator are

17    limited.  Uh, that's one of the things that I can be

18    specific about.  But, as I said, when it gets to the

19    facts of the -- of the case, the evidence, uh, I

20    really don't want to concede any of the facts.

21                THE COURT:  Okay.

22                The entire paragraph reads:  The defendant

23    stated that he possesses specialized skills as a

24    diesel mechanic, cook and navigator.

25                And then it says:  Upon the initial
```

```
1    disclosure of the Presentence Report, the defendant

2    relayed through defense counsel that he does not

3    have specialized skills as a diesel mechanic, cook

4    and navigator, but these are skills he would like to

5    develop while incarcerated.

6              MR. HERNANDEZ:  Correct, Judge, and -- and

7    the reason I point it out is that, uh, I -- he wanted

8    to make it clear that it wasn't that he changed his

9    mind, he believes that when he was interviewed that it

10   was -- it was mistaken, so --

11             THE COURT:  Okay.

12             MR. HERNANDEZ:  -- I realize that it's stated

13   in the revised PSR, but I -- I just wanted to make sure

14   that the Court was aware that he's not -- we're not

15   suggesting that he changed his story, that he simply

16   was misunderstood when he was interviewed.

17             THE COURT:  Okay.

18             Ms. Goodin, you have any objections to my

19   asking the -- my asking the, uh, Probation Officer

20   to simply remove that first sentence that says the

21   defendant stated that he possessed specialized

22   skills as a diesel mechanic, cook and navigator?

23             MS. GOODIN:  No, Your Honor.

24             THE COURT:  Okay.  We'll just take that out.

25   How about that.
```

```
 1              Just take out that first sentence.
 2              THE PROBATION OFFICER:  Would you like a
 3    revised PSR submitted?
 4              THE COURT:  Yes, so that it doesn't go --
 5    yes.
 6              THE PROBATION OFFICER:  Thank you,
 7    Your Honor.
 8              THE COURT:  Just -- okay, we'll remove that
 9    first sentence.
10              MR. HERNANDEZ:  Judge, uh, that's -- that's
11    all I have with respect to the facts.  I'm prepared to
12    address the objections when the Court is -- says it's
13    appropriate to, objections to the sentencing
14    guidelines.
15              THE COURT:  Okay.
16              All right, thank you.
17              If you'll have a seat.
18              You may have a seat, Mr. Hinestroza, and
19    Mr. Hernandez.
20              (Pause.)
21              Mr. Hernandez, you might want to put your
22    mask back on.
23              MR. HERNANDEZ:  Oh, yes.  Thank you.
24              THE COURT:  Unless you come to the podium.
25              MR. HERNANDEZ:  No, I -- I forgot.
```

1              THE COURT:  I know.  I do that too.

2              All right, let me just go through the

3    rather long history of this case, briefly.

4              This was -- Mr. Hinestroza went to trial

5    in this case, and the jury returned a verdict

6    back -- and it's been sometime ago -- back on

7    January the 30th, 2020.

8              And the jury returned a verdict of guilty

9    as to Count One of the Indictment, which was the

10   offense of conspiring to possess with the intent to

11   distribute cocaine while on board a vessel subject

12   to the jurisdiction of the United States.  And they

13   further found that the offense involved

14   five kilograms or more.

15             The jury also returned a verdict of guilty

16   as to Count Two of the Indictment, and that was the

17   substantive offense of knowingly and intentionally

18   possessing with the intent to distribute, or aiding

19   and abetting each other and other persons in

20   possession with the intent to distribute cocaine

21   while on board a vessel subject to the jurisdiction

22   of the United States.  And they also found that the

23   amount was five kilograms or more.

24             At that time I ordered a Presentence

25   Investigation Report and set sentencing off for

```
 1    about 90 days.
 2           Since that time the sentencing has been
 3    continued a number of times, and that was based on
 4    reasons related to COVID, the lockdown at the
 5    Pinellas County Jail and -- or not being able to
 6    transport Mr. Hinestroza to the courthouse.  And I
 7    don't remember the exact number of times, but it
 8    certainly has been continued two or three or more
 9    times based on that reason.
10           The Probation Officer has done a
11    Presentence Report, which we were talking about, and
12    has done an advisory guideline calculation, which
13    I'll talk about in just a minute, but I do want to
14    also say a couple of other things.
15           This was a case -- it was a boat case, and
16    it involved a boat, and there were I believe four
17    people on the boat, four -- four men, four
18    defendants.
19           Three of the defendants,
20    Mr. Randolph Megan [sic], Mr. Newbbooll May and
21    Mr. Reid-Dilbert went to trial, and they were
22    convicted as well on May the 6th, 2019 -- I'm sorry,
23    May 9th, 2019, and they were too found guilty of
24    Counts One and Two of the Indictment.
25           Mr. Hinestroza was severed out of that
```

1   trial based on the fact that his attorney at the

2   time, Mr. Martinez, had gone into the hospital I

3   believe the Friday before the trial was to start on

4   Monday and had open heart surgery.

5          So, after his release from the hospital,

6   and after the trial, he was not able to assist

7   Mr. Hinestroza who wanted to go to trial, and so a

8   new attorney was appointed, and I believe a new

9   attorney -- another attorney after that.

10          So, even though -- even though they were

11   all on the same boat, both the defendant that's here

12   today and the three other defendants were not tried

13   at the same time.

14          Mr. Megan was sentenced -- Rudolph

15   Randolph Megan [sic] was sentenced to 235 months,

16   followed by 60 months of supervised release on

17   August the 7th, 2019.

18          Mr. Raymond Newbbooll May [sic] was

19   sentenced on the same date to 235 months.

20          And Mr. Reid-Dilbert was sentenced on the

21   same day, August the 7th, 2019, to 235 months in the

22   Bureau of Prisons.

23          The Probation Officer has done an advisory

24   guideline, and I would like to just go through that

25   for a moment.

1          The base offense level, which is driven by

2     the amount of drugs, is a 38; there is a two-level

3     increase because Mr. Hinestroza was the captain of

4     the vessel, I believe by his own admission; and

5     there is a two-level decrease based on the safety

6     valve; and then there is an increase of two levels

7     based on obstruction of justice, making the total

8     offense under the advisory guidelines 40, and

9     criminal history category is one, and the range of

10    imprisonment is 292 to 365 months.

11          I will say also that at the sentencings I

12    believe all three of the defendants back in August

13    of 2019 received a two-level increase for

14    obstruction of justice.  And the defendants were

15    also held accountable -- those defendants were held

16    accountable for the same amount of drugs that the

17    Probation Officer is suggesting that this defendant

18    be held accountable for.

19          There is a Sentencing Memorandum that was

20    filed by the United States, it was filed by

21    Nick DeRenzo -- Nicholas DeRenzo who was the trial

22    attorney, and he is no longer with the U.S.

23    Attorney's Office, and this was filed back on April

24    the 16th, 2020.  I have read that.

25          So, I believe those are the only things

 1   that I wanted to say before we got started.

 2         I will say that the Government has no

 3   unresolved objections to the Presentence Report or

 4   the application of the guidelines.  I think

 5   originally with the other three defendants there may

 6   have been an objection, but as to this defendant

 7   there's no objection.

 8         Is that correct, Ms. Goodin?

 9         MS. GOODIN:  Yes, Your Honor.

10         THE COURT:  Okay.

11         All right.  The defendant, Mr. Hernandez,

12   has made -- I'm going to summarize them as the

13   Probation Officer has summarized -- I believe three

14   objections.

15         The first is to the offense conduct.  And

16   as you said earlier, I realize that the defendant is

17   objecting to the facts in the Presentence Report

18   that pertain to the evidence that came out to

19   trial -- in trial and his guilt in the offense.

20         But the specific objection is as to

21   post-arrest statements that were made in the

22   Presentence Report, and the objection is that these

23   statements were made during a proffer and they

24   should not be used against the defendant either

25   in -- well, in presentence -- in the Presentence

1    Report or at sentencing.

2            And I'll talk more about that in a minute.

3            The second objection is to the amount of

4    drugs involved.  And as we all know, there were no

5    drugs that were retrieved when this vessel was

6    stopped.  And I sat through the trial twice, so I

7    watched as the defendants tied the bales to a rope,

8    and then tied the ropes to the motors, and then sunk

9    the bales along with the motors.

10           But, admittedly, there were no drugs

11   retrieved.

12           There's also an objection to the

13   obstruction of justice.  The obstruction of justice

14   is based on the defendant and his co-defendants

15   together sinking the cocaine essentially in attempt

16   to hide any evidence prior to their being arrested I

17   guess with the thought if there is no cocaine, they

18   can't be charged with possession of cocaine.

19           But at any rate, those are the objections.

20   And I believe the same objections were put forth by

21   the co-defendants, and I did overrule the objections

22   with respect to the enhancement for obstruction and

23   also the amount of drugs involved.

24           The proffer's a little different because

25   we did have one -- another co-defendant that

```
 1   proffered and made statements, but this defendant
 2   made a number of statements.
 3            So Mr. Hernandez, I'll let you begin.
 4            MR. HERNANDEZ:  Judge, uh, you have
 5   summarized what my objections are, and I understand the
 6   Court has already addressed these in other sentencings
 7   involving the -- the co-defendants, however I did want
 8   to address it anew.
 9            Uh, as far as his post-arrest statements,
10   uh, all of these occurred before I was involved in
11   the case.  Uh, the proffer was I think with
12   Mr. Nate.
13            THE COURT:  It was.
14            MR. HERNANDEZ:  Uh, and, uh, so I understand.
15   I don't have any personal knowledge of sitting in on
16   the proffer, however --
17            THE COURT:  I don't believe Ms. Goodin does
18   either.  The agent may, but I don't believe Ms. Goodin
19   does either.  She wasn't here.
20            MR. HERNANDEZ:  Nevertheless, uh, in -- in
21   discussing and reviewing the Presentence Report with
22   Mr. Newbbooll, uh, he was concerned that the statements
23   that he was doing under the proffer were now being used
24   to -- to enhance his sentence, uh, at -- at sentencing.
25            So my objection is, is that as I've
```

 1    stated, that the, uh, defendant should not be

 2    penalized for making a proffer or trying to at that

 3    point to provide cooperation.

 4              Uh, with respect to the, uh, base offense

 5    level.  It is my argument that to say that the

 6    amount exceeded 450 kilograms of cocaine is -- is

 7    speculation, as the Court has -- has acknowledged.

 8              There was no drugs actually seized, and

 9    it -- to -- to simply come to the conclusion that it

10    exceeded 450, uh, kilograms of cocaine would be

11    speculation.

12              Uh, my position is, is that instead of the

13    total offense level being 38, it actually should be

14    32 based on -- on that argument.

15              And then finally, Judge, I understand the

16    Court has already addressed this issue, but it's my

17    argument to the Court that the defendant should not

18    receive a two-level enhancement for destruction of

19    cocaine because, uh, even if you take the evidence

20    as -- as presented by the Government, and obviously

21    the verdict, uh, I would submit that any act trying

22    to, uh, avoid detection or avoid getting caught is

23    typical of any criminal activity.

24              You don't, uh -- a criminal does not

25    commit crimes looking for ways to be uncovered.  And

1    for the fact that there was evidence presented that

2    it was the -- the cocaine was destroyed, I would

3    submit it's all part of the -- of the facts of the

4    case, it's all part of the offense conduct, and it

5    should -- it should be punished only once.

6              To -- to punish him for the offense

7    conduct, and then punish him for attempting to

8    destroy, and I guess it -- based on the facts that

9    were presented successfully destroy the cocaine, uh,

10   it -- it -- it in effect is punishing him twice.

11             So I would be asking the Court that he not

12   be enhanced for the two levels for obstruction of

13   justice.

14             That's all I have as far as the Sentencing

15   Guidelines calculations.  I do have some mitigating

16   factors to present when the Court is ready.

17             THE COURT:  All right.  Thank you.

18             Ms. Goodin.

19             Ms. Goodin, and I know you weren't the

20   trial attorney in this case, but as I recall at

21   trial the Government did not introduce any of the

22   defendant's statements made at the proffer.

23             They did introduce a statement that he had

24   made about being the captain and about knowing a lot

25   about what was going on, but I -- I think that was

 1   made, at least the captain's statement was made

 2   immediately when the boat was -- the go-fast vessel

 3   was interdicted.

 4          So I just -- I just make that comment, and

 5   we may want to come back to that, but anyway, go

 6   ahead.

 7          MS. GOODIN:  Yes, Your Honor.

 8          THE COURT:  Could I get you to stand at the

 9   podium as well and take off your mask while you're

10   speaking.

11          (Pause.)

12          Thank you.

13          MS. GOODIN:  Your Honor is correct in that at

14   trial there were no statements that were advanced, uh,

15   against the defendant, uh, however there was a

16   statement that he had made to actually one of the

17   agents, it was an Agent Karent [sic] McAlister who

18   testified at trial that he made an excited utterance

19   prior to them actually going into the subsequent

20   interviews that they made, and that's when he made the

21   statement to the fact that he was the captain and that

22   he knew more than the other individuals that were

23   involved in this crime.

24          THE COURT:  Okay.

25          MS. GOODIN:  Okay.

```
 1              And as to the objections raised by the
 2    defense, I will first go to --
 3              THE COURT:  Well, let me -- let me just ask
 4    you.  Let's -- let's -- can we talk about that first,
 5    the proffer.
 6              The Presentence Investigation Report --
 7    hold on just a minute, let me find the paragraphs.
 8              MS. GOODIN:  I believe it's paragraph eight
 9    and nine that were at particular issue, Your Honor.
10              THE COURT:  Yes.
11              Paragraph nine in my -- in the latest one,
12    the September 30th, it says:  During a post-arrest
13    interview Hinestroza admitted that he was the
14    captain of the go-fast vessel, and he acknowledged
15    that the vessel was loaded with 38 bales of cocaine
16    weighing approximately 760 -- 760 kilograms.
17              Hinestroza also stated that Randolph was
18    introduced to him as the load guard for the
19    smuggling operation, and that Randolph told him the
20    drugs would be taken to Belize.
21              Hinestroza also informed law enforcement
22    that Randolph knew the final offload destination of
23    the drugs.
24              I think that is the objection, and I'm
25    assuming those statements were in a proffer, so is
```

```
 1    that something that should be contained in the

 2    Presentence Investigation Report, and is there --

 3    can I consider that -- not the captain's statement,

 4    but the other information about the cocaine in

 5    imposing sentence here?

 6              MS. GOODIN:  Yes, Your Honor, and this was

 7    addressed within --

 8              THE COURT:  Will you pull the mic down.

 9              Thanks.

10              MS. GOODIN:  Yes.

11              Is this better?

12              Uh, yes, so --

13              THE COURT:  Oh, you were here at trial.  I

14    got a note.

15              MS. GOODIN:  I was at trial, yes.

16              THE COURT:  Okay.

17              MS. GOODIN:  I was just not there prior to.

18    I came on I think probably a couple of months before we

19    started trial.

20              THE COURT:  Thank you.

21              Go ahead.

22              MS. GOODIN:  So the Government's position is

23    that you may consider the statements of his

24    co-conspirators, and that is, uh, due to precedent that

25    was established in United States V Riley, 142 F.3d
```

```
 1    1254, looking at page 1258 --

 2              THE COURT:  Okay, I agree with that.

 3              MS. GOODIN:  Okay.

 4              THE COURT:  What I'm asking about the

 5    statements that Mr. Hinestroza made.

 6              MS. GOODIN:  Mr. Hinestroza?

 7              So the Government's position on that

 8    regard would be that those statements from his

 9    proffer come in because as written into our proffer

10    letters, anyone who makes statements that are

11    counter to the position, uh, essentially then

12    violates the proffer and allows us to bring those

13    statements forth, uh, against that individual.

14              And I can bring up the exact language of

15    it if that would be of help as well.

16              (11:35 a.m.)(Pause)

17              So the language in the proffer --

18              (Pause.)

19              -- essentially speaks to the idea that the

20    statements that he made during the proffer are

21    protected as long as it does not go to, uh,

22    anything -- as long as the defendant doesn't make a

23    position counter to that.

24              And, uh, that -- a position materially

25    different from the statements that he's made,
```

1    therefore the Government may use those statements to

2    rebut the defendant's position.

3              In regards to that statement specifically,

4    uh, regarding Mr. Hinestroza-Newbbooll claiming to

5    be the captain as we've stated, that that statement

6    was already one that was made to Agent McAlister

7    outside of the overall interview setting, and that

8    is the statement that is specifically being used for

9    the enhancement.

10             So while he does make reference to himself

11   being the captain within the proffer, the statement

12   of him being a captain is coming also from the

13   agent.

14             THE COURT:  Yes, and I realize that.  I

15   just -- my question really was should the paragraph

16   nine of the Presentence Report contain "he acknowledged

17   the vessel was loaded with 38 bales of cocaine weighing

18   approximately 760 kilograms.  Hinestroza also stated

19   that Randolph was introduced to him as the load guard

20   for the smuggling operation, and that Randolph told him

21   the drugs would be taken -- taken to Belize.

22   Hinestroza also informed law enforcement that Randolph

23   knew the final offload destination of the drugs."

24             So I -- as I understand your argument is

25   that that's -- should be allowed to remain in the

```
 1    Presentence Investigation Report, and it is

 2    something I can consider at sentencing based on the

 3    fact that Mr. -- by pleading not guilty and going to

 4    trial, Mr. Hinestroza -- and denying the fact that

 5    there was cocaine on board the vessel, took a

 6    position that was contrary to the proffer?

 7              MS. GOODIN:  Yes, Your Honor.

 8              THE COURT:  Okay.  All right.

 9              Thank you.  Go ahead.

10              MS. GOODIN:  Regarding the remaining

11    objections from the defense.  On the base offense level

12    of a 38, understanding that there were no drugs

13    retrieved in this vessel -- retrieved in this

14    interdiction, we would then turn to again, uh, as

15    mention through the sentencing memo, the idea that when

16    there is no seizure that the Court, uh, shall

17    approximate the quantity.

18              And the factual findings, uh, for the

19    purpose of sentencing may be based on other things

20    such as statements in the PSR, evidence heard at

21    trial or, uh, evidence presented during a sentencing

22    hearing.

23              We believe that the statements from Mr. --

24    from his co-conspirator also regarding the idea of

25    there being two ropes with 15 to 17 sacks are
```

1    consistent with the amount that we have identified

2    which is 760 kilos comes in as reliable hearsay, as

3    well Mr. Newbbooll -- Mr. Hinestroza-Newbbooll's

4    statements regarding the 760 and the 38 bales again,

5    uh, come in because although they were in the

6    proffer, they're now contrary to the position that

7    Mr. Hinestroza-Newbbooll is taking.

8            THE COURT:  All right.

9            MS. GOODIN:  And then finally on the

10   objection regarding the no enhancement for the

11   obstruction of justice, the defense argues that this is

12   all one singular course of conduct, however as you've

13   seen there have been many cases that have run through

14   where these boats do not go and dump the drugs or

15   otherwise try to minimize their conduct.

16           When Mr. Hinestroza-Newbbooll and his

17   co-defendants identified that they were -- had been

18   detected by the marine patrol aircraft, they made a

19   choice, they made a distinctive choice to try to

20   minimize their culpability by dumping the drugs

21   overboard.

22           They had several hours in which to dump

23   the drugs, and it was a long evolution that

24   required, as you stated, taking off not one but both

25   of their engines, leaving them adrift there in the

1    water.

2          And we believe that the idea that they

3    went to do so then is separate from the initial

4    crime of just the smuggling, because we were not

5    able to go ahead and weigh the drugs to have

6    somebody testify as to the, uh, purity of the drugs,

7    and other evidence that would have been present if

8    they had not taken this additional step to obstruct

9    justice, which is a separate offense from otherwise

10   just carrying the drugs from point A to point B

11   through international waters.

12         THE COURT:  Okay, Mr. Hernandez raises

13   a point, and the point is that obviously there are any

14   number of these cases in which the defendants have

15   thrown the drugs overboard, and forcing the Government

16   to try to pick them up, at least those that they can

17   pick up, from the drug field, or where they've thrown

18   them over the water, and yet those defendants have not

19   been enhanced for obstruction of justice, so what --

20   what's the difference here?

21         MS. GOODIN:  The difference here, Your Honor,

22   would be that, uh, as I said, this one is one where

23   the -- in most general cases we do have our defendants

24   that are pleading, and they plead to a certain amount

25   of drugs.

1              However, Mr. Hinestroza here, uh,

2     prevented us from providing a full prosecution as to

3     his culpability because of those same, uh, examples

4     of evidence that we were not able to bring forward,

5     uh, based on the fact that the drugs were put

6     overboard.

7              This is not just a singular crime of point

8     A to point B, but this is again stopping us from

9     fully investigating the crime, fully following up on

10    the evidence that would have otherwise been

11    available to the United States.

12             And again, the jettison did not occur

13    until the point at which they had detected that, uh,

14    an aircraft was above.  And so it's clear from the

15    time line of the events that they were specifically

16    trying to obstruct justice, and the idea as well

17    that they went so far out of their way to do so

18    considering that they were 110 nautical miles out

19    from the closest point on land, they were putting

20    their own lives at risk at the expense of trying to

21    minimize their culpability.

22             THE COURT:  Then by throwing the motors

23    overboard.

24             MS. GOODIN:  By throwing the motors

25    overboard, yes, Your Honor.

```
 1              THE COURT:  All right.

 2              Anything else regarding the objections?

 3              MS. GOODIN:  No, Your Honor, I'll stand on my

 4   motion.

 5              THE COURT:  All right, thank you.

 6              Let me rule on the objections, and I'll

 7   start the one, Ms. Goodin, you addressed last I

 8   think which is the obstruction.

 9              The guideline -- and I would like to start

10   there.  And as I said, I did -- I did allow this --

11   this obstruction increase for the other defendants,

12   so -- and I'm going to allow it here, but I'm not

13   doing anything different than I did with the -- with

14   the other defendants.

15              So give me just a minute and let me go to

16   the obstruction.

17              This is 3C1.1.  Obstructing or impeding

18   the administration of justice.  The defendant

19   willfully obstructs or impedes, or attempts to

20   obstructs or impede the administration of justice

21   with respect to the investigation, prosecution or

22   sentencing of the instant offense of conviction.

23              And then I look down at the application

24   notes, number one, and the second paragraph, which

25   reads:  Obstructive conduct that occurred prior to
```

1    the start of the investigation of the instant

2    offense of conviction may be covered by this

3    guideline if the conduct was purposefully calculated

4    and likely to thwart the investigation or

5    prosecution of the offense of conviction.

6         And then if I go over to -- I believe it

7    would be application note 4D.  It reads as follows:

8    Destroying or concealing or directing or procuring

9    another person to destroy or conceal evidence that

10   is material to an official investigation or judicial

11   proceeding, or attempting to do so.

12        And then there is the following:  However,

13   if such conduct occurred contemporaneously with the

14   arrest -- and then it gives the example of someone

15   attempting to swallow or throw away a controlled

16   substance -- it shall not standing alone be

17   sufficient to warrant an adjustment for obstruction,

18   unless it resulted in a material hindrance to the

19   official investigation and prosecution of the

20   instant offense or the sentencing of the offender.

21        And clearly there is no doubt that in this

22   particular situation it resulted in a material

23   hindrance to the official investigation or

24   prosecution of this case.

25        So I think it applies under the plain

1   reading of the guideline, but also there is a case,

2   and it's -- I think the Government has cited this,

3   United States versus Massey, and that did -- it's --

4   I'm sorry, 443 Fed.3d 814.  It's an Eleventh Circuit

5   case.

6          And this was an example I think where the

7   defendant did swallow the drugs.  But, destroying or

8   concealing or denying any evidence material to an

9   investigation or prosecution.  And that's really

10  what happened here.

11          This defendant, along with his

12  co-defendants, were attempting to hide or -- and

13  they did, destroy the evidence against them by tying

14  the bales to the engines and then sinking the

15  engines.

16          You know, I sat through this film -- or

17  video of this happening twice, and it occurred over

18  a long period of time.  It was not a quick situation

19  because they had to tie each of the bales to the

20  ropes, and then once they got strung out and they

21  had enough tied, then they sunk the bales by tying

22  them to the motor and releasing the motor.  Then

23  they took the other engine and did the exact same

24  thing.

25          The defendant, along with his

1   co-defendants, intentionally destroyed the evidence

2   by tying the evidence to the engine and sinking the

3   engine.  And it did hinder the investigation,

4   clearly, the prosecution, the -- even it was the

5   trial.

6          Because the Coast Guard couldn't recover

7   any of the sunk evidence, it left the Government

8   without the ability to actually test any of the

9   drugs, and it allowed the defendants to argue there

10  was no drugs found on the vessel, no drugs, no case.

11         It did not occur contemporaneously because

12  it was a period of hours while we watched them doing

13  what they were doing, and they were not intercepted

14  until a later time, but they had left themselves

15  dead in the water, so they weren't going anywhere.

16         And they actually were not intercepted for

17  sometime after they had done that, but, as I said,

18  they were dead in the water, they weren't going

19  anywhere.

20         So, it required the Government at trial to

21  bring in an expert to present the Coast Guard who

22  had to talk about the size of the bales, it had to

23  talk about the -- the number of kilos of cocaine

24  that would be contained in each bail, certainly made

25  a case more difficult to prove to the jury.

1    But it's a case clearly in my opinion that

2  the obstruction is appropriate.  I thought it was

3  appropriate for the other defendants, I think it's

4  appropriate for Mr. Hinestroza, and I would overrule

5  that objection.

6    As far as the amount of drugs involved.

7  Clearly the jury just made a determination that it

8  was more than five kilograms of cocaine.  However,

9  at trial the United States admitted several videos

10  which the Coast Guard claimed clearly was filming

11  and videotaping the defendants tying the bales to

12  the ropes, they were floating in the water allowing

13  the witnesses to observe the cocaine floating in the

14  water on the video and seeing how they were attached

15  by the ropes.

16    We had several officers testify at trial

17  that based on their experience that they were

18  20-kilogram bales of cocaine, and they based that on

19  the size and the shape and the amount of kilos or

20  bricks they thought that those bales contained.

21    Testimony was based on the videos which

22  you could slow down and count the number of bales.

23  And so the jury thought it was reliable enough for a

24  conviction, and I think it's reliable enough for an

25  estimation to be accurate that they should be

```
 1    held -- he should be held accountable like I held

 2    accountable his co-defendants for an amount of

 3    450 kilograms of cocaine.

 4          And finally, as far as the defendant

 5    objecting to the post-arrest statements, I just will

 6    reiterate the only statement that was introduced at

 7    trial was about him being the captain of the vessel

 8    and him having more knowledge I think than any of

 9    the other defendants.  I can't remember whether that

10    second statement came in or not, but the -- those

11    statements were made at a time other than during the

12    proffer.

13          Admittedly, the other statements that are

14    contained in the Presentence Report in which the

15    defendant admits to the entire thing were -- were

16    made in a proffer.  However, clearly he is -- makes

17    a proffer and then he takes a position to the --

18    completely to the contrary of what he has said in

19    the proffer, then I think it can be -- it can be

20    considered at sentencing, and it's appropriate in

21    the Presentence Report.  So I'm going to overrule

22    that objection as well.

23          And Mr. Hinestroza, I kept saying all

24    along I didn't understand, and I still to this day

25    do not understand how you could begin by proffering
```

```
 1    and admitting to everything which would have ended

 2    up with your sentence being less, and then you --

 3    and then your co-defendants get convicted, and then

 4    you still go to trial.  I mean, to this day I still

 5    do not understand that.

 6            But at any rate I will overrule each of

 7    the objections.

 8            Okay.  Do you want to let him talk next,

 9    or do you want to talk next, Mr. Hernandez.

10            MR. HERNANDEZ:  Judge, I would prefer to

11    finish my presentation --

12            THE COURT:  All right, and then I'll hear

13    from him.

14            All right, that's fine.

15            MR. HERNANDEZ:  Judge, uh, regarding

16    mitigation, I would ask the Court to consider a

17    downward variance.  Uh, there are several things that I

18    think bear giving considerable consideration.

19            Obviously Mr. Hinestroza has -- has

20    pointed out in the -- particularly in page five --

21    excuse me, page nine of the Presentence Report, uh,

22    he's got four children, uh, certainly he's unable to

23    assist them financially, uh, has -- basically is

24    indigent, obviously, and -- and he wants to be able

25    to get back to his family as soon as possible to
```

1  assist them from a financial standpoint as well as

2  being present for them.

3          Uh, on page 10, as you can see, uh, he

4  suffers from a variety of illnesses, including

5  arthritis, hypertension, diabetes, uh, and the Court

6  had earlier asked about the medication that he's

7  taking, and I think it lists the medication on page

8  10, paragraph 61, but certainly he does have a -- a

9  list of medical -- medical issues.

10         I would also point out that under mental

11 and emotional health, paragraph 63 on page 10, uh,

12 a lot of -- of the sleeping problems that he's

13 having, insomnia or whatever, is -- is haunted by

14 the memories of being raped as a child as -- as

15 pointed out in -- in that paragraph.

16         Uh, he does, as pointed out on page 11,

17 paragraph 60 -- 69, 70, 71, he began working as a

18 child when he was 13 years of age, despite the --

19 the criminal activity that the -- the Court -- or

20 excuse me, the jury has found him guilty of, uh, he

21 has held a variety of -- of lawful employment,

22 including shoveling, selling water, laboring,

23 construction, fishing, pushing wheelbarrows with

24 plantains, uh, and he has kept a reasonably stable

25 employment history, uh, and that includes also

```
 1    serving in the military in 1993, uh, that he

 2    provided a year of military service.

 3              Judge, there's a lot about this -- about

 4    this gentleman who, uh, I suggest is mitigation.

 5    I -- I would ask the Court, I understand the Court

 6    is about to press sentence, he is now, uh, 49 years

 7    old with a series of medical problems, I would ask

 8    the Court to seriously consider giving him a

 9    downward variance from the guidelines calculation

10    that the Court has arrived at.

11              I believe that giving him a -- a sentence

12    below the guidelines would serve the interest of

13    justice, it would be punishment, uh, but it would

14    also give him a -- basically a light at the end of

15    the tunnel, which I don't think he much has right

16    now.

17              Thank you, Your Honor.

18              THE COURT:  Mr. Hinestroza, this is your time

19    to say whatever you want to say regarding sentencing,

20    or anything else you think that's important for me to

21    hear before I impose sentence.

22              THE DEFENDANT:  Thank you.

23              THE COURT:  And you can remain seated, or you

24    can stand up, either way.  I just have to be able to

25    hear the interpreter.
```

```
 1              THE DEFENDANT:  I prefer to remain seated.

 2              THE COURT:  Okay.

 3              THE DEFENDANT:  Hello.

 4         May God bless you all.

 5              Your Honor, let it be clear that not none

 6   of the people who came here to testify said that

 7   they found drugs on me.  And they didn't say either

 8   that they found me sinking drugs.  In fact, they all

 9   changed their testimony --

10              THE INTERPRETER:  Interpreter requests

11   clarification as to one term used by the defendant.

12              THE COURT:  Paul, are you able to hear the

13   interpreter?

14              THE COURT REPORTER:  Yes.

15              THE COURT:  Okay.

16              THE DEFENDANT:  In fact, they only base their

17   testimony on their experience, and in the report that

18   they wrote they said that they found me in solace.  As

19   a survivor of solace.  Castaways.  And that is in the

20   Coast Guard report.

21              THE COURT:  Are you talking to us or him?

22         We can't hear you.  The interpreter.

23              THE INTERPRETER:  The interpreter has not

24   interpreted yet, Your Honor, the interpreter is waiting

25   for prior testimony to be uttered by the defendant --
```

```
 1              THE COURT:  -- to him.  All right, thank you.
 2              THE INTERPRETER:  No, the interpreter's not
 3    talking to the defendant, the interpreter is hearing
 4    the testimony in Spanish at this time, Your Honor.
 5              The interpreter will read -- will
 6    interpreter thus far what has been uttered.
 7              I don't understand what it says here,
 8    Count One and Count Two, that I was charged with
 9    possession of five kilograms or more.
10              (Pause.)
11              A person cannot be charged
12    constitutionally of possession of intent that is
13    controlled if it's not written in a document at the
14    time of being found in high seas.
15              In my hands I'm holding a certificate from
16    the Secretary of State, Mike Pompeo, and from
17    Commander David Brennan, and this is from the MDLA
18    [sic], Maritime [sic] Law and Defense Act.  This
19    certificate from Mr. Pompeo never mentions that I
20    had drugs or that I sunk any drugs.  It only makes
21    reference to jurisdiction, uh, 46.
22              (Pause.)
23              Aboard the Canadian Montman [sic] I was
24    never under arrest.  In those days that I was on
25    board that ship I was never arrest -- I was never
```

1   handcuffed.

2         And there was never a picture taken of me

3   of the docker where I would be given a number there

4   what I would appear as a -- as a person who is a

5   prisoner.

6         In fact, I was deceived, or fooled.  In

7   the informed -- correction by the interpreter -- in

8   the report that the officers put together, it says

9   that I was arrested under 19 U period S period C

10  period A period 1703.  That report says that I was

11  in United States waters 12 miles.  But the report

12  actually says -- says that I was 110 miles southwest

13  of Jamaica.

14        In my opinion, sentencing me on both

15  counts violates, uh, double jeopardy under the

16  Fifth and Sixth Amendment.

17        I have a -- I have a case here as a

18  reference of Brugger [sic].  Here it says that

19  possession with intent of five kilos or more on the

20  first count, that same thing is repeated in the

21  second count.

22        THE COURT:  I'm sorry, I couldn't understand

23  the interpreter.

24        THE INTERPRETER:  On the first count it says

25  possession with intent of five kilograms or more, and

```
 1   the second count says the same thing.

 2              (Pause.)

 3              Well, I want to thank you, Your Honor,

 4   and, uh, I didn't want to come here to this country,

 5   I was brought over here, and, uh, I -- you know, I,

 6   uh -- I indicated to my attorney that I intend to

 7   appeal and, uh, my motions have been denied.

 8              The prosecutor was allowed to bring forth

 9   witnesses, but I was not allowed the same

10   opportunity.

11              (Pause.)

12              The only thing that I don't understand

13   about all this here, uh, how do you call it, the --

14   the jury, is, uh, regarding -- regarding my verdict.

15   It was not explained to me, uh, anything about the

16   doubts that the jury had.

17              I wanted -- they apparently wanted, uh to

18   repeat the trial.  I was only -- they were only --

19   they only addressed the -- my attorney or -- my

20   attorney and the, uh, prosecutors, but nobody

21   explained anything about me about that.

22              (Pause.)

23              And to -- to conclude, I want to ask -- I

24   want to ask my attorney to conclude that he appeal

25   my case and to submit a motion so that I can get,
```

```
 1   uh -- just a moment, please, I'm looking for this.
 2             (Pause.)
 3             I want to obtain the transmissions or
 4   transcriptions in Spanish and in English of the
 5   whole -- of the whole trial, the whole process from
 6   December 6th of 2018 until now so that I can be able
 7   to appeal.
 8             (Pause.)
 9             THE INTERPRETER:  The interpreter requests
10   repetition of the last part of the statement.
11             (Pause.)
12             THE DEFENDANT:  Your Honor, I also want to
13   request that I be given all the transcriptions of my
14   friends when they had their cases, uh, because I
15   believe the attorneys for those -- for my colleagues,
16   my co-defendants did not ask for those transcriptions,
17   uh, I would like to request them.
18             And I would also like the transcription
19   regarding the changes of attorneys that have
20   happened, uh, because I have not seen them.  I would
21   like them.  Uh, maybe it's something that you're not
22   going to be looking at, but it's, uh, somebody above
23   you.
24             Uh, also, information that -- why that
25   discovery was not complete, the discovery of the --
```

1   of the evidence.

2          THE COURT:  I'm sorry, I couldn't --

3          THE DEFENDANT:  The discovery -- the

4   discovery of the evidence, that was not complete

5   either, and I wanted to get that information.  As well

6   as mentioning the fact that there are many questions

7   raised about the ion scans.

8          May God bless the prosecutor's office and

9   Mr. Lorenzo.  May got bless the gentleman from HIS

10  and his family.  May God bless Mr. Daniel and his

11  family.  May got bless Ms. Susan Bucklew and her

12  family.  And may God bless you, sir.

13          Thank you very much.

14          THE COURT:  Thank you, sir.

15          THE DEFENDANT:  Gracias senor.

16          THE COURT:  There are a number of issues,

17  some of which I can address and some of which I cannot

18  address.

19          You referred to papers from Mike Pompeo

20  and also other officials, and that had to do with

21  the jurisdiction in this case.

22          Prior to the trial I found that --

23  actually, prior to the co-defendants' trial I made a

24  determination that the vessel was stopped in

25  international waters based on the fact that it was

```
 1   stopped in international waters, and I made a
 2   determination that I had jurisdiction, the
 3   United States had jurisdiction, and that was based
 4   on the fact that the country that the Coast Guard
 5   contacted denied any connection to the vessel, and
 6   the vessel was a stateless vessel in international
 7   waters subject to the jurisdiction of the
 8   United States.
 9           There were two counts.  Actually, had you
10   been convicted of only one, I don't think it would
11   have made any difference in the guideline
12   calculations or the sentence, but one was a
13   conspiracy count and one was a possession count, and
14   they were -- you were found guilty on both of those.
15           As far as an appeal, I understand you wish
16   to appeal, and you are entitled to an attorney
17   during the appeal, and you certainly have the right
18   to appeal this case, both the sentence I'm going to
19   impose and the case.
20           As far as the verdict, the --
21           THE INTERPRETER:  Your Honor.
22           THE COURT:  Yes.
23           THE INTERPRETER:  The interpret missed one
24   word as to the right to appeal.  Could the Court repeat
25   that paragraph for the interpreter.
```

1          THE COURT:  Yes.  I just said you would have

2    the right to appeal this case, both the verdict and the

3    sentence that I'm going to impose.

4          As far as the witnesses, and not being

5    able to call witnesses, I'm not aware of what

6    witnesses that you needed to call, or wanted to

7    call, and were not allowed to call, but that's

8    certainly and issue that you can raise in appeal if

9    your attorney thinks that is an appropriate issue to

10   raise on appeal.

11         As far as the jury is concerned, the jury

12   returns a verdict, nobody questions the jury on the

13   basis for their verdict.  I don't.  The attorneys

14   don't have the right to do that.  They announce

15   their verdict, and that's their verdict.

16         As far as the ion scan evidence, that was

17   an issue at trial.  I ruled on the admissibility of

18   that evidence prior to trial, and that may be an

19   issue you wish to raise on appeal, I don't know.

20         There have been a number of changes in

21   attorneys in this case.  You started out as I recall

22   with the Federal Public Defender, and he withdrew

23   based on what he interpreted as your request that he

24   withdraw.

25         I've already talked about Mr. Martinez who

```
 1   was appointed after that.  And Mr. Martinez had open

 2   heart surgery, was unable to continue.

 3          The next attorney that was appointed

 4   sought to withdraw at your request.  And then we had

 5   Mr. Hernandez.  So there have been I believe four

 6   attorneys appointed in this case.

 7          But --

 8          THE DEFENDANT:  Five.

 9          THE COURT:  Five?

10          THE DEFENDANT:  Si.

11          THE COURT:  All right, I may have missed one.

12   I'd have to go back and look at the docket.  You may --

13   you may be right and I may be wrong, it may have been

14   five attorneys.

15          I have only Mr. Hernandez, Mr. Nate,

16   Mr. Martinez and Mr. Zimmerman, so that would be

17   four, but.

18          At any rate, all of those issues, any

19   issue that your attorney thinks it's appropriate

20   after consulting with you to raise on appeal can be

21   raised on appeal.

22          So Mr. Hernandez, is there any legal

23   reason why I shouldn't proceed with sentencing at

24   this time?

25          MR. HERNANDEZ:  No, Your Honor.
```

```
 1              THE COURT:  Ms. Goodin, is there any legal

 2   reason I shouldn't proceed with sentencing at this

 3   time?

 4              MS. GOODIN:  No, Your Honor.

 5              THE COURT:  Is there anything -- I'm sorry.

 6   I apologize.  I didn't give you a chance to allocute.

 7              Is there anything you would like to say

 8   regarding sentencing, Ms. Goodin?

 9              MS. GOODIN:  Yes, just briefly, Your Honor.

10              THE COURT:  Okay.

11              MS. GOODIN:  Thank you.

12              Your Honor, I would just like to summarize

13   briefly.  This was a boat case.  Uh, we've

14   established through sentencing that we are dealing

15   with a quantity of 760 kilos of cocaine, which is

16   approximately about 152 times the min man, and one

17   and a half times the base offense level of 38.

18              That value has wholesale value of

19   $22 million -- over $22 million, which would be two

20   or three times that amount on the street value.

21              And Mr. Hinestroza's role in that, uh, as

22   he told the agent was as the captain.  He was there,

23   uh, and he -- as he said, he knew more than

24   everybody else.  He had the decision-making role

25   within the vessel and was part of the decision that
```

1   led to them jettisoning the contraband, uh, as we

2   have stated previously by sinking both of his

3   engines, uh, to get rid of those drugs leading to

4   the obstruction issue -- enhancement.

5            During the defense's case on mitigation

6   they brought up the fact that

7   Mr. Hinestroza-Newbbooll has four children, is

8   indigent, uh, and has other issues at -- personal

9   issues at play.

10           However, the Government's position is that

11  that poverty is not an excuse, uh, because there are

12  other -- millions of other similarly situated

13  individuals in his community and throughout Latin

14  America who don't resort to this sort of large scale

15  drug trafficking, uh, to solve their problems.

16           The defendant may have made this decision

17  under the guise of helping his family, or trying to

18  secure a better station in life, however even if --

19  even if the defendant had the most noblelist [sic]

20  of intentions, uh, with all of that money, that

21  money -- it was tainted.

22           And it was tainted at the cost of the

23  irreparable damage to the individuals, the families

24  and the communities that would have been victims if

25  the cocaine had made it into distribution into

1    society.

2         When looking at the 3553 factors, I'll

3    first look to the issue of general deterrence.  It's

4    important to send a message loud and clear to the

5    communities within where Mr. Hinestroza-Newbbooll's

6    from and to others who might be otherwise tempted to

7    make the same decision that the money is never worth

8    it, and in creating a deterrent that this --

9    creating your sentence the message must be that it's

10   never worth it.

11        Further, when we look to the other

12   defendants that were sentenced in this case, as you

13   noted earlier on the record, they each received 235

14   months.  And we believe that the guideline sentence

15   is appropriate for Mr. Hinestroza-Newbbooll with no

16   downward variance to avoid any unwarranted

17   sentencing disparities.

18        Numerous cases of this nature come through

19   the Middle District of Florida, and the defendant's

20   sentence would be consistent with the vast majority

21   of the sentences that are given to similar situated

22   individuals.

23        And then lastly I'll just speak to the

24   issue of promoting respect for the law.  Uh,

25   throughout Mr. Hinestroza-Newbbooll's allocution, he

1  continued to maintain his, uh, evasiveness,

2  contending that he was a castaway, which is contrary

3  to the record, uh, as stated in his proffer.  He

4  admitted to the full, uh, extent of these crimes,

5  carrying the drugs, the quantity of the drugs, and

6  his role on the vessel and leading up to, uh, the

7  voyage altogether.

8          And therefore, looking at all of those

9  factors, we believe that a guideline sentence would

10  be appropriate for this individual.

11          Thank you.

12          THE COURT:  All right, thank you, Ms. Goodin.

13          Now, Ms. Goodin, is there any legal reason

14  why I shouldn't proceed with sentencing in this

15  case?

16          MS. GOODIN:  No, Your Honor.

17          THE COURT:  All right, Mr. Hinestroza, if you

18  would stand, please, sir, I am going to impose sentence

19  at this time.

20          On January the 30th, 2020 a jury found you

21  guilty, and they found you guilty of both counts

22  that were charged in the Indictment, both the

23  conspiracy to distribute and possess with intent to

24  distribute the five kilograms or more, and, number

25  two, the actual substantive count of possession with

1    the intent to distribute, or aiding and abetting in

2    the intent to distribute five kilograms or more

3    while on board a vessel subject to the jurisdiction

4    of the United States.

5              I accepted that plea -- sorry, that's --

6    I'm reading something that shouldn't be in there.

7              You pled not guilty, and the jury found

8    you guilty, so it's now my time to impose sentence

9    in this case.

10             You have told me that -- and Mr. Hernandez

11   has told me that he has been over the Presentence

12   Report with you, and Mr. Hernandez speaks Spanish.

13   I -- admittedly, the Presentence Report is in

14   English.

15             There were a number of objections to the

16   Presentence Investigation Report.  I have overruled

17   the objections, and I'll go through them again

18   briefly.

19             I overruled the objection to the

20   obstruction of justice and found that that was an

21   appropriate adjustment.

22             I overruled the objection as to the amount

23   of drugs in the base offense level before --

24   exceeded 450 kilograms of cocaine.

25             I overruled the objection to having in the

1   Presentence Report and me relying on that at

2   sentencing your admissions during the proffer

3   regarding the fact that -- not only the fact that

4   you were the captain, and you actually made that

5   admission at a time outside of the proffer, but to

6   the drugs and to the amount of drugs.

7           So I'm going to overrule all of the

8   objections.  I will adopt the facts and the

9   guideline calculations that are contained in the

10  Presentence Report with that one exception that I

11  asked the Probation Officer to take out.

12          The total offense level is a 40, the

13  criminal history category is one, the range of

14  imprisonment is 292 to 365 months under the advisory

15  guidelines, five years of supervised release, 50,000

16  to 20,000,000 is the fine range -- not going to

17  impose a fine -- and a $200 special assessment.

18          Both of you have told me, Mr. Hernandez

19  and Ms. Goodin, that there's no legal reason why I

20  shouldn't proceed with sentencing, so I'm going to

21  do so at this time.

22          Everyone has made a statement,

23  Mr. Hinestroza has made a statement, Mr. Hernandez

24  on behalf of Mr. Hinestroza, Ms. Goodin on behalf of

25  the United States.  I've considered those

1   statements.

2          I've considered the 3551 and 3553 factors

3   in the -- in imposing this sentencing, Title 18,

4   United States Code, Section 3551 and 3553.

5          It is the judgment of this Court,

6   Mr. Hinestroza, that you be sentenced to 292 months

7   in the Bureau of Prisons.  It is a low end advisory

8   guideline calculation, or based on the low end of

9   the advisory guidelines.

10         Upon release from imprisonment, I'm going

11  to place you on a term of five years of supervised

12  release.  You'll have to comply with the standard

13  conditions adopted by the Middle District of

14  Florida.

15         If you are deported, and you will be, you

16  will not be allowed to reenter the United States

17  without the express permission of the appropriate

18  governmental authority.

19         You'll have to cooperate in the collection

20  of DNA by the Probation Office.

21         The mandatory drug testing requirements

22  are suspended, however you'll have to submit to a

23  mandatory -- or you'll have to submit to random drug

24  testing not to exceed 104 tests per year.

25         I will waive the fine.

```
 1              I'll assess the $200 special assessment,
 2    which is not waivable.
 3              I have considered the advisory guidelines.
 4    I've also considered Title 18, United States Code,
 5    Section 3553 in imposing this sentence, specifically
 6    a sentence that's sufficient but not greater than
 7    necessary.
 8              I've also considered the fact that I have
 9    sentenced three of your co-defendants, and that I
10    sentenced them at the low end of the advisory
11    guideline, and I wish to avoid any disparity in
12    sentencing.
13              I think it's important to protect the
14    public because of the large amount of drugs
15    involved.  So I am not going to vary downward.  I
16    realize this is a very long sentence, but I'm not
17    going to vary downward.
18              The Court having pronounced sentence,
19    Mr. Hernandez, do you have any objections to the
20    sentence or the manner in which it was imposed,
21    other than the objections that you might have
22    already raised?
23              MR. HERNANDEZ:  No, Your Honor.
24              THE COURT:  The sentence that I am imposing,
25    both the supervised release to follow the term of
```

1    imprisonment, and the term of imprisonment, which is

2    292 months, will run concurrent as to both Counts One

3    and Two.

4            Ms. Goodin, do you have any objections to

5    the sentence or the manner in which it was imposed?

6            MS. GOODIN:  No, Your Honor.

7            MR. HERNANDEZ:  Coleman.

8            THE COURT:  Okay.

9            You have the right to appeal the sentence

10   that I have just imposed.  Any notice of appeal must

11   be filed within 14 days or it's waived.

12           You are entitled to a Court-appointed

13   attorney to represent you in any appeal.  And the

14   Government is also entitled to appeal.

15           I would also instruct the Clerk to waive

16   any type of filing fee.  So you can appeal without

17   cost, if you appeal.

18           Mr. Hernandez.

19           MR. HERNANDEZ:  Judge, uh, two -- two

20   matters.

21           Uh, I believe that Mr. Hinestroza would

22   like the Court to recommend Coleman as the facility.

23           And then secondly, obviously I've been

24   instructed to file the notice of appeal, which I

25   will promptly do, I'm assuming, but I'm asking, am I

1   being appointed to handle the appeal?

2           THE COURT:  Yes.

3           MR. HERNANDEZ:  Having said so, I just want

4   to make sure that I -- I will, of course, request a

5   transcript, but I have no way of being able to get it

6   in Spanish, that -- I just wanted to state for the

7   record --

8           THE COURT:  No.

9           MR. HERNANDEZ:  -- I've never tried to do

10  that, but I -- I don't know if that's something that

11  can be done.

12          THE COURT:  Yes, and I have never -- I have

13  never done that.  I have never granted the cost to --

14  and especially in terms of a trial, to translate the

15  entire trial into Spanish.

16          MR. HERNANDEZ:  Yes, ma'am, I just wanted to

17  bring it up for the record in case it becomes an issue

18  later.

19          THE COURT:  If requested, I would deny the

20  request, yes.

21          MR. HERNANDEZ:  Thank you.

22          THE COURT:  I will recommend Coleman, and I

23  will recommend any vocational training that

24  Mr. Hinestroza would like to participate in.  I know

25  that he had originally said he would like to

1   participate in any kind of vocational training having

2   to do with diesel, and mechanics, and also culinary or

3   cooking.

4           So, I'll make that recommendation.

5           MR. HERNANDEZ:  Thank you, Your Honor.

6           THE COURT:  All right, Mr. Hinestroza, thank

7   you, sir.

8           We're finished.

9           (Thereupon, the Court stood in recess at

10  12:30 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2    **STATE OF FLORIDA**              )

3    COUNTY OF HILLSBOROUGH    )

4

5         I, PAUL K. SPANGLER, Retired Official Court

6    Reporter for the United States District Court, Middle

7    District, Tampa Division,

8         DO HEREBY CERTIFY, that I was authorized to and

9    did, through use of Computer Aided Transcription, report

10   in shorthand the proceedings and evidence in the

11   above-styled cause, as stated in the caption hereto, and

12   that the foregoing pages numbered 1 to 58, inclusive,

13   constitute a true and correct transcription of my

14   shorthand report of said proceedings and evidence.

15        IN WITNESS WHEREOF I have hereunto set my hand

16   in the City of Tampa, County of Hillsborough, State of

17   Florida, this 1st day of March, 2020.

18

19        S/PAUL K. SPANGLER

20        _____
          PAUL K. SPANGLER, Retired Official Reporter

21

22

23

24

25