[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-13891

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

                                                            Plaintiff-Appellee,

versus

EMIRO HINESTROZA-NEWBBOOLL,

                                                            Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:18-cr-00594-SCB-JSS-1

_____

Before JORDAN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Emiro Hinestroza-Newbbooll ("Hinestroza") appeals his convictions and 292-month sentence for trafficking cocaine in international waters, in violation of the Maritime Drug Law Enforcement Act ("MDLEA"). *See* 46 U.S.C. §§ 70501–70508. He argues that the district court violated his rights under the Confrontation Clause, abused its discretion by admitting unreliable expert testimony, and erred in calculating his guideline range at sentencing. After careful review, we affirm.

## I. Factual Background and Procedural History

In December 2018, a Coast Guard airplane conducting counter-narcotics surveillance observed four individuals on a tarp-covered go-fast vessel that was floating in a known drug-trafficking area about 100 miles southwest of Jamaica. After the plane arrived in the area, the vessel began to move erratically, and Coast Guard air personnel saw and recorded the vessel's crew tying together and jettisoning groups of white, rectangular packages. None of these packages were recovered, but multiple government witnesses testified that they were consistent with 20-kilogram bales of cocaine recovered during prior interdictions of similar go-fast vessels.

When a Coast Guard boarding team reached the vessel, Hinestroza identified himself as the captain and stated that they had been either fishing for mahi-mahi or scuba diving for conch. Aside

from a single snorkeling mask, however, no fishing or scuba diving gear was present on the vessel. And the vessel was otherwise largely bare except for 55-gallon fuel drums. The vessel's engines had been tied to and sunk with the packages.

No drugs were found on board, but Coast Guard personnel took multiple samples or "swipes" from the vessel and its crew and ran them through an Ionscan 500 DT machine. The Ionscan machine uses ion mobility spectrometry to identify trace amounts of illicit materials. *See, e.g.*, *United States v. Williams*, 865 F.3d 1328, 1335 (11th Cir. 2017) (describing this technology). This testing revealed the presence of trace amounts of cocaine on both sides of the vessel, near the cargo hold of the vessel, and on all four of the vessel's crewmembers.

Hinestroza and his three codefendants were indicted under the MDLEA on one count of conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine and one count of possession with intent to distribute five kilograms or more of cocaine. *See* 46 U.S.C. §§ 70503(a), 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii). Hinestroza's trial was severed from his codefendants, whose convictions and sentences were affirmed on appeal in February 2021. *United States v. Newball May*, 846 F. App'x 831 (11th Cir. 2021).

Before trial, the district court determined that the go-fast vessel was "subject to the jurisdiction of the United States" as a "vessel without nationality," based on a certification from the U.S. State Department submitted by the government. The court also

denied Hinestroza's motion to exclude the Ionscan evidence and expert testimony about that evidence after holding a hearing under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Based on testimony from the government's proffered expert, Coast Guard Senior Chief Maritime Enforcement Specialist Steven Bomentre, the court found that the evidence was sufficiently reliable to be considered by the jury.

A jury ultimately found Hinestroza guilty as charged in the indictment. Then, at sentencing, the district court determined a drug quantity in excess of 450 kilograms of cocaine, applied enhancements for Hinestroza's being the captain of the vessel and for obstructing justice by jettisoning and sinking the packages, and awarded a reduction under the safety valve. These calculations established a total offense level of 40 and a corresponding guideline range of 292 to 365 months. The court imposed a sentence of 292 months.

Hinestroza appeals, making three main arguments: (1) the admission of a State Department certification to establish jurisdiction under the MDLEA violated his rights under the Confrontation Clause; (2) the court abused its discretion by admitting the Ionscan evidence at trial; and (3) the court erred at sentencing in finding a drug quantity in excess of 450 kilograms and applying the enhancement for obstruction of justice. We address each argument in turn.

## I. MDLEA Jurisdiction

The MDLEA broadly prohibits drug trafficking while on board any vessel "subject to the jurisdiction of the United States." *See* 46 U.S.C. § 70503(a). To establish extraterritorial jurisdiction under the MDLEA, the government may submit a State Department certification showing that the nation of registry claimed by the vessel's master "does not affirmatively and unequivocally assert that the vessel is of its nationality." *See id.* §§ 70502(c)(1)(A), (d)(1)(C), (d)(2). Whether MDLEA jurisdiction exists "is not an element of an offense" but rather a "preliminary question[] of law to be determined solely by the trial judge." *Id.* § 70504(a).

Under this Circuit's binding precedent, "[a] United States Department of State certification of jurisdiction under the MDLEA does not implicate the Confrontation Clause because it does not affect the guilt or innocence of a defendant." *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016); *United States v. Campbell*, 743 F.3d 802, 807–09 (11th Cir. 2014). Although Hinestroza argues that our precedent is wrong, we are bound to follow it "unless and until it is overruled by this court en banc or by the Supreme Court." *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) (quotation marks omitted).

Accordingly, the district court did not violate Hinestroza's confrontation rights by relying on a certification from the State Department to establish jurisdiction under the MDLEA.

## II.  Admission of Ionscan Evidence

We review for abuse of discretion the district court's decisions regarding the admissibility of expert testimony and the reliability of an expert opinion. *United States v. Barton*, 909 F.3d 1323, 1330 (11th Cir. 2018).  "This abuse-of-discretion standard recognizes the range of possible conclusions the trial judge may reach, and thus affords the district court considerable leeway in evidentiary rulings." *Id.* (citations and quotation marks omitted).  We must affirm the district court unless it has applied the wrong legal standard or made a clear error of judgment that resulted in substantial prejudice to the defendant. *Id.* at 1330–31.

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony.  Fed. R. Evid. 702.  As the "gatekeeper" for expert testimony, the district court is tasked with ensuring that the expert is qualified and that the testimony is sufficiently reliable and relevant to be considered by the jury. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147–48 (1999).

Whether expert testimony is sufficiently reliable depends on several factors. *See, e.g.*, *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 593–94 (1993).  They include whether the theory or technique at issue can be and has been tested, whether it has been subjected to peer review and publication, its known or potential rate of error, and whether it is generally accepted in the field. *Id.* This inquiry is "flexible" and context-dependent, however; not every factor applies or must be met in every case for the expert testimony to be admissible. *See United States v. Brown*, 415 F.3d

20-13891               Opinion of the Court                 7

1257, 1267 (11th Cir. 2005) (upholding the admission of expert testimony that met the "general acceptance" *Daubert* factor only).

Hinestroza contends that the government failed to offer any evidence showing that the Ionscan technology is a reliable tool for identifying the presence of narcotics. He does not contest the qualifications of the government's expert more generally.

Here, the district court did not abuse its discretion in denying the motion to exclude the Ionscan evidence. At the *Daubert* hearing, the government's expert, Bomentre, who had extensive training and experience with Ionscan testing, testified in relevant part that Ionscan testing was generally accepted as a method of detecting trace amounts of narcotic substances and explosives on surfaces; was widely used by federal law enforcement agencies, including at airports, the border, and the U.S. Capitol; had a published error or false-alarm rate of less than one percent, with false negatives more likely than false positives; and was supported by peer-reviewed studies showing that ion mobility spectrometry, the technology used by the Ionscan machine, was highly reliable in detecting specific molecules.

This testimony suggests that Ionscan testing is widely used for the detection of trace amounts of narcotics and is based on a peer-reviewed and reliable methodology. *See Daubert*, 509 U.S. at 592–94; *Brown*, 415 F.3d at 1267. That Hinestroza identifies shortcomings that could be raised on cross-examination does not show that the evidence was inadmissible. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence,

and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Given the flexible nature of the gatekeeping inquiry, the district court acted well within its discretion in concluding that the expert testimony and Ionscan evidence in this case was sufficiently reliable for admission under Rule 702.

## III. Sentencing

Turning to the sentencing issues, we review for clear error the district court's determination of the quantity of drugs used to establish a base offense level for sentencing purposes. *United States v. Reeves*, 742 F.3d 487, 506 (11th Cir. 2014). For the obstruction-of-justice enhancement, "we review the district court's factual findings for clear error and we review its application of the factual findings to the sentencing guidelines *de novo*." *United States v. Doe*, 661 F.3d 550, 565 (11th Cir. 2011).

A. *Drug Quantity*

The base offense level for drug offenses usually depends on the quantity of drugs involved in the offense. *See* U.S.S.G. § 2D1.1(a)(5), (c). When the drug amount seized does not reflect the scale of the offense, the district court must approximate drug quantity. *Reeves*, 742 F.3d at 506. This determination may be based on "fair, accurate, and conservative estimates" of the quantity attributable to a defendant but cannot be based on "merely speculative" calculations. *Id.* (quotation marks omitted). The

20-13891               Opinion of the Court                    9

government bears the burden of proving drug quantity by a preponderance of the evidence.  *Id.*

Here, the district court did not clearly err in finding a drug quantity of 450 kilograms or more of cocaine, which triggered the highest base offense level of 38.  As support for that finding, the court noted that a video admitted at trial clearly depicted the defendants tying together and jettisoning the packages, that the number of packages could be counted if the video was slowed down, and that several officers testified at trial based on their personal experience in similar interdictions that the packages were consistent with 20-kilogram bales of cocaine.  Over Hinestroza's objection, the court also found that it could consider his post-arrest statements admitting that the go-fast vessel was loaded with 38 bales of cocaine weighing approximately 760 kilograms.  In addition, Hinestroza did not object to the presentence investigation report's ("PSR") statement that a codefendant had told authorities that they dumped 30 to 34 sacks, though he claimed the sacks were filled with conch, not cocaine.

Besides a vague reference to "impermissible PSR statements," Hinestroza fails to develop on appeal, and so has abandoned, any argument that the court could not consider these statements at sentencing.  *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (issues not "plainly and prominently" raised appeal, with supporting arguments and authority, are deemed abandoned).  In short, we find no clear error in the court's determination of drug quantity.  *See Reeves*, 742 F.3d at 507.

B. *Obstruction of Justice*

Under § 3C1.1, a defendant's offense level is increased by two levels if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," and the obstructive conduct related to that offense. U.S.S.G. § 3C1.1. According to § 3C1.1's commentary, this guideline may cover obstructive conduct that occurred before the start of the investigation "if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." *Id.*, cmt. n.1. Obstructive conduct includes "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding." *Id.*, cmt. n.4(D).

The district court did not clearly err in finding that Hinestroza obstructed justice within the meaning of § 3C1.1. The record reflects that, after seeing the Coast Guard plane, over a period of nearly two hours, Hinestroza and his codefendants jettisoned and sank the cocaine they were transporting. Even assuming no "official investigation or prosecution" existed at that time, the obstruction enhancement still applies because this conduct was "purposefully calculated, and likely, to thwart the investigation or prosecution" by destroying all evidence of their crime. U.S.S.G. § 3C1.1, cmt. n.1; *see United States v. Wayerski*, 624 F.3d 1342, 1352 (11th Cir. 2010) ("The defendants' affirmative steps to prevent law enforcement from detecting their illicit activity and to impede any

investigation show that they consciously acted with the purpose of obstructing justice.").

Hinestroza also asserts that, "at the time the packages were jettisoned, the United States had no jurisdiction over the boat at issue or its crew." Leaving aside the accuracy of that statement, which the government disputes, he fails to explain its relevance for sentencing. The evidence of jettisoning was admitted at trial and is plainly relevant to the offenses of conviction, over which the district court properly found jurisdiction. *See* U.S.S.G. § 3C1.1; *United States v. Green*, 981 F.3d 945, 953 (11th Cir. 2020) (stating that, at sentencing, "[t]he district court may base factual findings on evidence presented at trial"). Hinestroza offers no support for his view that the court could not consider this conduct when calculating his guideline range. *Cf. United States v. Behr*, 93 F.3d 764, 765–66 (11th Cir. 1996) ("[D]istrict court[s] may consider criminal conduct that occurred outside of the statute of limitations period as relevant conduct for sentencing purposes.").

## IV. Conclusion

In sum, we reject Hinestroza's arguments and affirm his convictions and 292-month sentence.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 12, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-13891-DD
Case Style: USA v. Emiro Hinestroza-Newbboll
District Court Docket No: 8:18-cr-00594-SCB-JSS-1

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call <u>Bradly Wallace Holland, DD</u> at <u>404-335-6181</u>.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion